# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2990

_____

Kathy S. Van Vickle,

             Appellant,

v.

Michael J. Astrue, Commissioner
of Social Security,

             Appellee.

\* Appeal from the United States
\* District Court for the
\* District of Minnesota.

_____

Submitted: March 14, 2008
Filed: August 21, 2008

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Kathy Van Vickle appeals the judgment of the district court[1] upholding the final decision of the Commissioner of Social Security to deny her application for disability insurance benefits. We affirm.

_____

[1] The Honorable Susan Richard Nelson, United States Magistrate Judge for the District of Minnesota, to whom the case was referred for decision by consent of the parties pursuant to 28 U.S.C. § 636(c).

On October 23, 2003, Van Vickle filed an application for disability insurance benefits under Title II of the Social Security Act. Van Vickle claimed that she could not work because she suffered from seronegative rheumatoid arthritis (adult Still's disease), fibromyalgia, cervicalgia (neck pain), and degenerative disc disease, which caused her extreme fatigue and prevented her from sitting, standing, or walking for long periods of time. The regional commissioner denied Van Vickle's application initially and again on reconsideration. She then requested a hearing before an Administrative Law Judge (ALJ), which was held on August 18, 2005.

At the hearing, Van Vickle testified that she quit her previous job as a social worker, primarily because of the pain in her neck and back. She claimed that she could not sit for longer than twenty minutes without "fidgeting." Van Vickle also claimed that she suffered from "extreme fatigue," although she did not mention fatigue as a reason she stopped working. Van Vickle further testified that she suffered from side effects from her medications. In particular, she testified that methotrexate, which she took every Wednesday for her Still's disease, made her so nauseous that she could not work on Wednesday and sometimes on Thursday.

A vocational expert testified that a person of the same age, who possesses the same education and past work experience as Van Vickle, could work as a social worker even if the person was limited to (1) lifting and/or carrying ten pounds occasionally, and less than ten pounds frequently, (2) standing and/or walking with normal breaks for a total of two hours in an eight hour work day, (3) sitting with normal breaks for a total of six hours of an eight hour work day, and (4) changing position between sitting and standing every thirty minutes. The vocational expert testified, however, that if the person needed to change position every twenty minutes or take a day off each week for medical problems, as Van Vickle had testified, the person could not be gainfully employed.

Following the five-step evaluation process set forth in 20 C.F.R. § 416.920(a)(4), the ALJ determined that Van Vickle was not disabled. At steps one through three, the ALJ found that Van Vickle was not engaging in substantial gainful activity, that the combination of her impairments was severe, and that her impairments did not meet or equal a listed impairment. At step four, the ALJ found that Van Vickle was not disabled because she retained the residual functional capacity (RFC) to perform her past relevant work as a hospital social worker as it is typically performed in the national economy. Specifically, the ALJ found that Van Vickle had the RFC to "lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk (with normal breaks) for a total of about 2 hours in an 8-hour workday, if allowed to change positions every thirty minutes, [and] sit (with normal breaks) for a total of about 6 hours in an 8-hour work day, if allowed to change positions every thirty minutes."

The ALJ found that Van Vickle's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but that her "statements concerning the intensity, duration and limiting effects of these symptoms were not entirely credible." The ALJ noted that his RFC finding was consistent with Van Vickle's daily activities and the reports of three treating and examining physicians. The ALJ specifically mentioned that he found Van Vickle's testimony of her problem with ongoing fatigue to be in conflict with the medical opinions of Van Vickle's doctors, the lack of medical support indicating an ongoing problem with fatigue, and Van Vickle's reported daily activities. Although Van Vickle testified at the hearing that she suffered from side effects from her medication, the ALJ noted that Van Vickle had not reported such significant side effects to her doctors.

Van Vickle petitioned the Appeals Council for review. She submitted new evidence, including a report from Lisa Neubauer, an occupational therapist, who opined that Van Vickle was "performing below the sedentary physical demand level." Neubauer reported that Van Vickle's "maximum weight handling is between 5 and 10

lbs," and that her "[s]itting tolerance . . . is limited at between 10 and 20 minutes with repositioning." The Appeals Council considered the new evidence, but denied review because it "found that the information [did] not provide a basis for changing the [ALJ]'s decision." Upon denial of the request for review, the ALJ's decision became the final decision of the Commissioner. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992).

The district court upheld the Commissioner's decision. On appeal, Van Vickle argues that there is not substantial evidence on the record to support the ALJ's adverse credibility finding, and that the case should be remanded in light of the new evidence presented to the Appeals Council.

II.

We review the district court's decision *de novo*, and will affirm if the Commissioner's decision is supported by substantial evidence on the record as a whole, including the new evidence that was considered by the Appeals Council. *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000); *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).[2] "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's decision." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). We consider evidence that "supports as well as detracts from the Commissioner's decision, and we will not reverse simply

---

[2]We have noted on several occasions that consideration of evidence submitted only to the Appeals Council when evaluating the decision of an ALJ is a "peculiar task for a reviewing court," *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994), and others have urged us to reconsider the practice. *See Eads v. Secretary of Dept. of Health and Human Servs.*, 983 F.2d 815, 817-18 (7th Cir. 1993). "But we do include such evidence in the substantial evidence equation," *Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1995), and of course this panel must follow circuit precedent.

because some evidence may support the opposite conclusion." *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008) (internal quotations omitted).

Van Vickle argues on appeal that substantial evidence does not support the ALJ's finding that her testimony was not entirely credible. An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Guilliams v. Barnhart*, 393 F.3d 798, 802-03 (8th Cir. 2005); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "Where adequately explained and supported, credibility findings are for the ALJ to make." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000). Although Van Vickle challenges the ALJ's credibility determination as a whole, she takes specific issue with the findings by the ALJ that she can sit for up to thirty minutes without changing position (Van Vickle testified that she needed to change position every twenty minutes), that she does not have significant side effects from her medication (she testified that she had to miss work one day per week because one of her medications made her nauseous), and that her subjective complaints of extreme fatigue were not entirely credible.

There is substantial evidence on the record to support the ALJ's finding that Van Vickle can sit for thirty minutes without changing position. Although Van Vickle testified that she had to change position every twenty minutes or she would be "fidgeting," she also testified that she rides in her car for twenty to thirty minutes and can "push" herself to ride an hour. Two of Van Vickle's treating physicians, Dr. Kristi Arel and Dr. Sunny Kim, reported that Van Vickle should change positions every thirty minutes. The report from Neubauer, the occupational therapist, takes a different view. Neubauer states that Van Vickle's sitting tolerance is ten to twenty minutes. But the fact that Van Vickle can point to some contradictory evidence in the record does not lead to a conclusion that the ALJ's decision is not supported by substantial evidence. In certain circumstances, an ALJ *may* determine that an occupational therapist's opinion outweighs the opinion of a treating physician, such as where the occupational therapist "has seen the individual more often than the

treating source.³ Social Security Ruling (SSR) 06-3p, 71 Fed. Reg. 45,593, 2006 WL 2329939 (Aug. 9, 2006). Here, however, there is no evidence that Neubauer saw Van Vickle more than once, while Drs. Arel and Kim saw Van Vickle on several occasions. Thus, it would be entirely appropriate for an ALJ to give more weight to Van Vickle's treating doctors' opinions. *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

The ALJ's determination that Van Vickle's medications do not create any significant side effects that prevent her from working is also supported by substantial evidence. Van Vickle testified that while she was still working, she was home sick each Wednesday because she felt so nauseous from taking methotrexate. The reports from Dr. Paul Florell, who treated Van Vickle's Still's disease, tell another story. For example, on May 5, 2003, Dr. Florell notes that Van Vickle had "a couple mouth sores or nasal sores from the methotrexate," but there was no mention of nausea in the report. In addition, Dr. Florell notes that he told Van Vickle that she could stop taking the methotrexate for two weeks, but that she decided to "continue with it," because the medication was "not bothering her that much." On June 20, 2005, Dr. Florell noted that Van Vickle worried that the methotrexate was "bothering her bladder," but again,

---

³ Citing *Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007), Van Vickle argues that we should remand her case to the ALJ to consider Neubauer's report in light of SSR 06-3p, which was published after the ALJ's ruling. SSR 06-3p clarifies how the agency considers opinions from sources, such as occupational therapists, who are not "acceptable medical sources." In *Sloan*, the ALJ considered evidence from a medical source that was not an "acceptable medical source," but gave it "little weight." 499 F.3d at 887. After the ALJ's decision, the SSA published SSR 06-3p, which states that "an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." We remanded for the ALJ to consider whether the new policy affected the prior decision. *Id.* at 889. In this case, the ALJ did not consider Neubauer's report at all, because it was not created until after the ALJ made his decision. Thus, the new Social Security ruling is not inconsistent with the ALJ's analysis.

there is no mention of nausea. The only evidence on the record that methotrexate made Van Vickle nauseous, aside from her own testimony, is a report of Dr. Florell from March 18, 2005, in which he notes that "[Van Vickle] is now on tablet methotrexate because they can't get the liquid, at this time, for her injections. It does make her a little bit more nauseated, but she has to put up with that for right now."

Aside from nausea, Van Vickle also disagrees with the ALJ's assessment that the side effects from her medications (occasional blurred vision, fatigue, nausea, diarrhea, nose and mouth sores, and bladder problems), are not significant. Some of the evidence in the record simply contradicts her testimony. For example, on June 20, 2005, Dr. Florell notes that Van Vickle did not have a history of diarrhea from her medications. And though some of the other side effects may have caused discomfort, Van Vickle has not indicated that they are significant in the sense that they prevent her from working as a social worker. Most of the evidence to which Van Vickle points regarding her fatigue (which she claims is both a side effect of medication and a symptom of her illnesses) is from *before* the alleged onset date of disability. In fact, Van Vickle claims that she has had an ongoing fatigue problem since December 1998. Van Vickle nonetheless worked until April 2003. Thus, despite suffering from what she calls "extreme fatigue," Van Vickle continued working for over four years. In addition, at the hearing, Van Vickle said that she stopped working mostly because of her neck and back pain. When asked specifically why she quit her job as a social worker, Van Vickle did not mention fatigue, or any other side effect of medication. Van Vickle bears the burden to prove that her disability prevents her from performing her past work. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). The ALJ concluded that Van Vickle's medication side effects are not significant enough to prevent her from working, and that her subjective complaints in general are inconsistent with the record. This conclusion is supported by substantial evidence.

Finally, Van Vickle argues that the ALJ misread Dr. Arel's report, and that the mistaken reading was a factor in the ALJ's ultimate conclusion that Van Vickle could

perform her past work as a social worker. In her hand-written report, it appears that Dr. Arel wrote that Van Vickle "may *walk*, but still will require frequent rest ([no] prolonged walking)." (A.R. at 287) (emphasis added). The ALJ read this statement to say that Van Vickle "may *work*, but still will require frequent rest." Reading the report to say "work" rather than "walk," the ALJ thought Dr. Arel was suggesting that Van Vickle needed "frequent naps" during the workday. He found that this assertion was not supported by the record. Assuming that the ALJ misread Dr. Arel's report, we see no prejudice to Van Vickle. The ALJ did not rely on his belief that Dr. Arel thought Van Vickle could work. In fact, the ALJ noted that later in her report, Dr. Arel stated that Van Vickle's condition *prevented her* from sustaining gainful employment. The ALJ correctly noted, however, that the ultimate conclusion of whether Van Vickle could sustain gainful employment is a question for the Commissioner. 20 C.F.R. § 404.1527(e)(1); *see also Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("[T]reating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed, because they are merely opinions on the application of the statute, a task assigned solely to the discretion of the [Commissioner]." (internal quotations omitted)). The ALJ properly considered the physical limitations that Dr. Arel placed on Van Vickle, and actually adopted them. There is no indication that the ALJ would have decided differently had he read the hand-written notation to say "walk" rather than "work," and any error by the ALJ was therefore harmless. *See Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007); *Berger v. Astrue*, 516 F.3d 539, 544-45 (7th Cir. 2008); *Schow v. Astrue*, 272 F. App'x 647, 651 n.2 (9th Cir. 2008).

*       *       *

For these reasons, the judgment of the district court is affirmed.

_____