# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1946
_____

Veronica Rose Grindley

*Plaintiff - Appellant*

v.

Kilolo Kijakazi,[1] Commissioner of Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: May 13, 2021
Filed: August 12, 2021

_____

Before SMITH, Chief Judge, SHEPHERD and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Veronica Rose Grindley appeals the district court's[2] order affirming the Social Security Administration's denial of her claim for disability benefits. We affirm.

_____

[1]Kilolo Kijakazi has been appointed to serve as Acting Commissioner of Social Security, and is substituted as appellee pursuant to Federal Rules of Appellate Procedure 43(c).

## I. Background

Grindley filed a claim for a period of disability, disability insurance benefits, and supplemental security income based on her diagnoses of mood disorders, lupus, and fibromyalgia, among other ailments.

After an administrative hearing, the administrative law judge ("ALJ") denied Grindley's claim for disability benefits. The ALJ found that Grindley had severe impairments including fibromyalgia, lupus, and other ailments. The ALJ also performed a residual functional capacity analysis and found that Grindley could perform light work. But ultimately, the ALJ ruled that Grindley's history of substance abuse, her non-compliance with treatment recommendations, and the lack of disability findings from her treating physicians provided substantial evidence to conclude that she was not disabled.

The Appeals Council declined to review the ALJ's decision, and Grindley filed a complaint in federal court seeking reversal of the SSA's denial of benefits. Adopting the magistrate judge's recommendation, the district court affirmed the SSA's denial of benefits. Grindley timely filed a notice of appeal.

## II. Discussion

"We review de novo the district court's decision upholding the [SSA's] denial of benefits." *Renfrow v. Astrue*, 496 F.3d 918, 920 (8th Cir. 2007). "We must affirm the decision of the ALJ if it is supported by substantial evidence in the record as a whole." *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).

---

[2]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas, adopting the report and recommendations of the Honorable Beth M. Deere, United States Magistrate Judge for the Eastern District of Arkansas.

"Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." *Id.* Substantial evidence in the record as a whole "requires a more searching review than the substantial evidence standard[.]" *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009). Considering the record as a whole, we must "take into account record evidence that fairly detracts from the ALJ's decision." *Id.*

"Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Tilley*, 580 F.3d at 679 (quoting *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (alterations in original) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)).

The SSA follows a "five-step process for considering disability claims." *Perks*, 687 F.3d at 1091.

> During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004)).

### A. Objective Evidence

The ultimate issue on appeal is whether there is substantial evidence in the record as a whole to support the ALJ's denial of Grindley's claim for benefits. But

first, we must address Grindley's arguments regarding which evidence should be considered.

## 1. Evidence Considered

Grindley first argues that the ALJ improperly relied on the lack of objective evidence supporting her fibromyalgia diagnosis in denying her claim. She claims that fibromyalgia often does not manifest itself in objective symptoms, and the ALJ should not have based its denial on strictly objective evidence, or lack thereof.

Grindley is correct that an ALJ cannot rely solely on objective evidence to adjudicate a claim for benefits but instead must evaluate all evidence—including a claimant's subjective evidence—in its determination. *See Rainey v. Bowen*, 814 F.2d 1279, 1281 (8th Cir. 1987) ("[T]he absence of objective medical evidence to support an allegation of disabling pain is but one factor used to evaluate the applicant's credibility. Indeed, a subjective complaint of pain may not be disregarded on the sole basis that there is no supporting objective evidence." (internal citation omitted)).

But the ALJ never stated that he relied solely on objective evidence in adjudicating Grindley's claim; instead, the ALJ explained "[o]verall, objective findings in this case fail to provide strong support for the claimant's allegations[.]" Throughout his opinion, the ALJ referenced Grindley's testimony on issues related to (1) her daily routine and ability to function in daily grooming activities, (2) her ability to work well with others and concentrate, and (3) allegations of pain and lupus flare ups. The ALJ's "objective findings" statement was made in the context of rejecting Grindley's subjective allegations of disabling symptoms. Thus, we reject Grindley's objective-evidence challenge.

Grindley next argues that the ALJ's decision must be reversed based on several unsupported statements and its exclusions of relevant evidence. Specifically, she asserts that the ALJ erred by (1) stating her exams had not demonstrated

widespread pain in all quadrants of the body, (2) noting only Grindley's "normal" exam results while ignoring the results demonstrating "moderate-severe" pain and an ongoing fibromyalgia diagnosis, and (3) excluding other evidence supporting Grindley's fibromyalgia diagnosis.

First, we consider the ALJ's statement that "[a]lthough the medical records do contain a diagnosis for fibromyalgia, most of the claimant's examinations have failed to demonstrate widespread pain in all quadrants of the body, or at least 11 positive tender points on physical examination." We conclude the ALJ's statement is supported by substantial evidence in the record as a whole, including (1) a physical examination performed by Dr. Alina Voinea stating that Grindley's tender points were "very tender" but failing to mention the specific location of the pain and (2) an examination by Dr. Jasen Chi that, while mentioning Grindley's complaints of muscle pain, stated that there was "no neck or lower back pain."

In weighing all of the evidence, it was not improper for the ALJ to highlight Grindley's "normal" exam results because the "normal" results were the most consistent results set forth by Grindley's treating physicians. The result Grindley seeks would require the ALJ to emphasize outlier results over the more consistent "normal" results. The ALJ's decision recognizes Grindley's fibromyalgia diagnosis, but every fibromyalgia diagnosis does not entitle a claimant to benefits. *See Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007); *accord Michel v. Colvin*, 640 F. App'x 585, 596 (8th Cir. 2016) (unpublished). The ALJ weighed all of the evidence before him and made a permissible decision to give more weight to the "normal" exam results. This decision is supported by the record as a whole.

For the same reasons, we reject Grindley's arguments that the ALJ erred in disregarding evidence of (1) her "moderate-severe" musculoskeletal pain and "widespread" arthralgia and (2) the multidimensional health assessment questionnaire indicating that she had difficulty performing daily tasks. There was substantial evidence in the record for the ALJ to focus on the "normal" reports and findings by Grindley's treating physicians.

-5-

Even if the ALJ made some misstatements in his order, reversal of an ALJ's decision is not required if an error was harmless, meaning "[t]here is no indication that the ALJ would have decided differently" if the error had not occurred. *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008). Further, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Sloan v. Saul*, 933 F.3d 946, 951 (8th Cir. 2019) (quoting *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999)). Even if we had concluded that the ALJ made some factual misstatements in his decision, we hold alternatively these errors would be harmless because Grindley still fails to meet the criteria to be considered disabled.

## 2. Tender Points

Grindley argues that the ALJ's decision should be reversed because it failed to develop a sufficient record on the factual issue of her "tender points," which are indicative of a fibromyalgia diagnosis. Grindley argues that the ALJ's mention of her tender points was inconsistent throughout the decision and that remand is required to fully develop the record on this crucial issue. Grindley also claims that the record supports her having eighteen tender points, instead of less than eleven tender points as the ALJ found in denying Grindley's claim.

The ALJ acknowledged (and no one disputes) that fibromyalgia can be a severe and chronic condition. *See Pirtle*, 479 F.3d at 935; *see also Brosnahan v. Barnhart*, 336 F.3d 671, 678 (8th Cir. 2003) (recognizing the value of "trigger points" in determining the severity of fibromyalgia symptoms); *Forehand v. Barnhart*, 364 F.3d 984, 987 (8th Cir. 2004) ("The disease is chronic, and '[d]iagnosis is usually made after eliminating other conditions, as there are no confirming diagnostic tests.'" (alteration in original) (citation omitted)).

"While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Jones*

*v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (cleaned up) (quoting *Goff*, 421 F.3d at 791); *accord Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). Undeveloped statements may exist "when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Jones*, 619 F.3d at 969 (quoting *Goff*, 421 F.3d at 791).

The tender-points testing issue did not require further development. Looking at the record as a whole, there is substantial evidence of Grindley's fibromyalgia symptoms without the tender-points analysis. Therefore, any inconsistency in the ALJ's decision regarding Grindley's tender points is harmless error. *See Van Vickle*, 539 F.3d at 830. This case was not a close call, and clarification on the tender-points issue would not have significantly swayed the ALJ's decision.

## B. Substantial Evidence Supports Denial

We next address the primary issue—whether substantial evidence in the record as a whole supports the ALJ's denial of disability benefits to Grindley. We conclude that it does.

Grindley makes several arguments regarding the ALJ's failure to properly interpret or consider her testimony and argues that the ALJ (1) failed to consider her statements regarding pain and (2) erred in finding her testimony was inconsistent with objective medical evidence.

We normally defer to an ALJ's credibility determination. *See Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010). When evaluating a claimant's credibility as to subjective complaints, the ALJ must consider the *Polaski* factors. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Those factors include: "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating

factors; and functional restrictions." *Halverson*, 600 F.3d at 931 (quoting *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009)). "Another factor to be considered is the absence of objective medical evidence to support the complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." *Id.* at 931–32 (citing *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008)).

"The ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Id*. at 932 (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). "[A]n ALJ is entitled to make a factual determination that a [c]laimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Jones*, 619 F.3d at 975 (citation omitted). And, "misuse of medication is a valid factor in an ALJ's credibility determinations." *Chaney v. Colvin*, 812 F.3d 672, 677 (8th Cir. 2016) (quoting *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003)).

Here, the ALJ's credibility determination and weighing of the testimony is supported by the undisputed facts that Grindley (1) suffered from opioid addiction and substance abuse, (2) smoked cigarettes against doctor recommendation, and (3) failed to consistently take prescribed medication or make changes to her diet as recommended by her treating physicians. It is undisputed that Grindley has struggled with opioid addiction throughout her disability claim period. It is also undisputed that Grindley failed to comply with recommended treatment and prescribed medication throughout the period of her disability. At multiple medical appointments, Grindley admitted that she failed to keep up with her prescribed medication regimen. Based on these facts, the ALJ was within his discretion to discount Grindley's complaints about pain. *See Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016).

Grindley argues the ALJ failed to provide an adequate explanation for his conclusion that her testimony was inconsistent with objective medical evidence.

Again, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Sloan*, 933 F.3d at 951 (citing *Senne*, 198 F.3d at 1067). An ALJ's reasoning need only be "clear enough to allow for appropriate judicial review." *Id*. The ALJ's brevity is not reversible error.

Separately, Grindley argues that the ALJ failed to consider her allegations of pain arising from her fibromyalgia. We have held that an ALJ may discount a claimant's subjective statements when those statements are inconsistent with objective record evidence as a whole. *Polaski*, 739 F.2d at 1322. However, "the ALJ may not discredit a claimant solely because her subjective complaints are not fully supported by objective medical evidence." *Brosnahan*, 336 F.3d at 677–78. "[W]hile the ALJ may disbelieve subjective testimony of pain if inconsistencies exist in the evidence as a whole, the ALJ may not disbelieve the claim by ignoring medical evidence." *Rainey*, 814 F.2d at 1281 (internal citation omitted). Also, we have held "in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity." *Brosnahan*, 336 F.3d at 677.

The record demonstrates that objective evidence contradicted Grindley's complaints of pain. In March 2014, Grindley complained of joint pain, and, after a thorough exam, Dr. Chi found no evidence of tenderness or pain in Grindley's knees, ankles, feet, hands, elbows, hips, jaw, or spine. During an emergency room visit in January 2016, Grindley reported "[n]o back pain, no muscle pain, [and] no joint pain." Furthermore, a residual functional capacity assessment found that her impairments were not disabling, as she could perform certain tasks like sitting, walking, lifting, and carrying, within limits. Thus, there are several facts supporting the position that Grindley's fibromyalgia was not a disabling condition.

It was reasonable for the ALJ to rely on objective medical evidence in adjudicating Grindley's claim. But in this case, the ALJ's decision shows that it also

considered Grindley's allegations of pain in its analysis. When discussing Grindley's mental impairment, the ALJ relied on Grindley's own testimony stating that she had "minimal problems with personal care" and "alleged problems with attention and concentration." The ALJ "acknowledge[d] that the claimant [] alleged severe disabling symptoms and pain." The ALJ explicitly considered "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms" in his analysis but found that the objective evidence outweighed Grindley's allegations.

We conclude that the ALJ considered Grindley's allegations of pain in his decision. Accordingly, we reject each of Grindley's arguments about the ALJ's failure to consider her allegations, as it is apparent that the ALJ factored Grindley's allegations into his analysis.

### C. Physician Testimony

Grindley next argues that the ALJ erred in giving greater weight to the opinions of non-examining physicians than the opinions of Grindley's treating physicians.

A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record." *Halverson*, 600 F.3d at 929 (quoting *Tilley*, 580 F.3d at 679); *accord Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). "The record must be evaluated as a whole to determine whether the treating physician's opinion should control." *Halverson*, 600 F.3d at 929; *accord Perkins*, 648 F.3d at 897.

"When a treating physician's opinions 'are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight.'" *Halverson*, 600 F.3d at 929–30 (quoting *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir.2002)). "[A] claimant's noncompliance can constitute evidence that is inconsistent with a

treating physician's medical opinion and, therefore, can be considered in determining whether to give that opinion controlling weight." *Wildman*, 596 F.3d at 964 (alteration in original) (quoting *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008)).

Grindley argues that the ALJ failed to credit her treating physician's opinion because the ALJ did not give any weight to a "check-box" sheet created after an examination performed by Dr. Richard Heck on September 14, 2016. We disagree. We have held that an ALJ can give limited weight to a physician's conclusory statements. *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021). The check-box form only allowed for conclusory statements and did not give Dr. Heck the chance to explain whether he concluded that Grindley was disabled. Instead, the form stated that Grindley had the capacity to sit or stand for two hours at a time and engage in some light lifting, without any further analysis or explanation.

The September 2016 medical examination completed by Dr. Heck is one of many examinations, the majority of which stated that Grindley's fibromyalgia symptoms were treatable with medication. By May 2017, Dr. Heck completed another check-box form indicating that Grindley's condition had improved because she could sit for eight hours per day, stand for four hours per day, and handle some moderate lifting. Thus, Grindley's argument fails.

Grindley also argues that the ALJ's reliance on state agency consultants in determining her residual functional capacity was an error because the state agency consultants did not provide enough detail in their opinions. We conclude that, even without the state agency consultants' opinions, there was sufficient evidence in the record to deny Grindley's claim.[3] The ALJ's analysis addresses the findings of all

[3]Separately, Grindley asks this court to rely on the results of a "Mental Diagnostic Evaluation" to determine her ability to perform physical tasks. This argument is misplaced, as the evaluation did not conclude that Grindley was disabled.

of Grindley's treating physicians before addressing the consultants' opinions, which mirrored the treating physicians' opinions. Thus, we reject Grindley's challenge to the ALJ's consideration of the state agency consultants' opinions.

It is also clear that the ALJ's analysis gave some weight to the opinions of Grindley's treating physicians. First, the ALJ gave a detailed account of Grindley's medical history and the treatments recommended by her various treating physicians. The ALJ provided a detailed explanation for why he only gave marginal weight to Dr. Heck's September 2016 check-box form and more weight to the May 2017 form. The ALJ also gave some weight to the opinion of Dr. Patricia Griffen, a consultative examiner, in finding that Grindley suffered "modest symptoms other than those caused by substance abuse." Accordingly, Grindley's challenge fails, and we uphold the ALJ's decision.

### III. Conclusion

We affirm the district court's judgment.

_____