Roger HOLMSTROM, Plaintiff–
Appellant,

v.

Larry G. MASSANARI,[1] Commissioner
of Social Security Administration,
Defendant–Appellee.

No. 01–1432.

United States Court of Appeals,
Eighth Circuit.

Submitted: Sept. 12, 2001.

Filed: Oct. 29, 2001.

1. Pursuant to Fed.R.App.P. 43(c)(2), Acting Commissioner of Social Security Larry G. Massanari, appointed to serve effective March 29, 2001, is automatically substituted for his predecessor Kenneth S. Apfel.

Lisa C. Gavin and Joseph G. Basque, Cedar Rapids, IA, for plaintiff–appellant.

Gary L. Hayward, Asst. U.S. Atty., Des Moines, IA, for defendant–appellee.

Before: MORRIS SHEPPARD ARNOLD and BRIGHT, Circuit Judges, and BOGUE,[2] District Judge.

BRIGHT, Circuit Judge.

Roger Holmström appeals the district court's affirmance of the Social Security Commissioner's decision to deny his application for supplemental security income (SSI) benefits. Holmstrom argues that the administrative law judge (ALJ) improperly discounted his testimony and the opinions of his treating physicians, resulting in an incorrectly determined residual functioning capacity (RFC) and a denial of benefits that is not supported by substantial evidence. The record as a whole indicates that Holmstrom has mental impairments and a deteriorating physical condition qualifying him for SSI benefits as of November 5, 1998. Holmstrom reapplied for SSI benefits in May 2000 and was awarded benefits. This appeal covers the period between Holmstrom's initial application and his subsequent award of SSI benefits. We reverse and direct that Holmstrom receive SSI benefits based on his total disability as of November 5, 1998.

## I. BACKGROUND

Holmstrom applied for SSI benefits in November 1995, claiming disability chiefly due to lower back pain and depression. The Commissioner denied Holmstrom's application and his request for reconsideration. Holmstrom then received a hearing before an ALJ who, on August 17, 1998, issued a decision denying SSI benefits. Holmstrom requested review by the Appeals Council of the Social Security Administration and submitted additional evidence. The Appeals Council made that evidence part of the record, but denied Holmstrom's request for review. Holmstrom then sought review by the district court under 42 U.S.C. § 405(g). The dis-

718

trict court's judgment affirmed the ALJ's decision, and Holmstrom appealed to this court.

The evidence before the ALJ included Holmstrom's medical records from Veterans' Administration (VA) facilities in California and Nebraska.[3] These records show a long history of lower back pain beginning with his fall from a ladder in 1986. The records from his years in California contain X-rays, CT scans and MRIs performed between 1991 and 1995 that show narrowed disc spaces, spur formation, degenerative disc disease, and disc bulges or herniations in the lower lumbar and upper sacral region of Holmstrom's spine. X-rays from 1996 show a "complete loss" of the disc space between two vertebrae in his lower back. Throughout his time in California, Holmstrom took prescribed medications for his back, including daily doses of muscle relaxants, 2400 milligrams of ibuprofen, and painkillers containing codeine for "breakthrough pain." In attempts to reduce his back pain, Holmstrom underwent trigger point injections, physical therapy, hypnosis, and use of a transcutaneous electrical nerve stimulator unit. The medical records indicate that, on occasion, Holmstrom received temporary and partial pain relief from these treatments. In 1996, doctors diagnosed Holmstrom with major depression and treated him with individual and group therapy and a prescribed antidepressant medication. By the end of that year, Holmstrom's psychiatrist recorded that the depression was "in remission." In April 1997, Holmstrom reduced his intake of the antidepressant medication on his own because of side effects; at his next visit, the doctor he saw acceded to this.

After Holmstrom applied for SSI benefits, the California Department of Social Services requested consultative examinations. In March 1996, an orthopedist examined Holmstrom and found him normal in all respects save for decreased range of motion in his lumbar spine. An RFC assessment in October 1996 incorporated this information and concluded that Holmstrom had virtually no physical limitations. The doctor who performed an April 1996 consultative psychiatric exam concluded that Holmstrom could function adequately in work situations.

The medical records from the VA medical center in Omaha, Nebraska, indicate that Holmstrom began to see doctors there in December 1997. He began seeing Dr. Carmen Britt, who became his treating physician for his back, in February 1998. Dr. Britt continued Holmstrom's medication regime of muscle relaxants, ibuprofen, and codeine pain killers. In June 1998, Dr. Britt completed an RFC assessment form on which she indicated that Holmstrom could lift and carry up to ten pounds occasionally, and bend or reach up occasionally, but should not squat, crawl, kneel, twist, or climb. In answer to several other questions regarding Holmstrom's limitations, Dr. Britt wrote on the form "ask the patient." The record indicates that Dr. Britt had seen Holmstrom on three occasions before she completed the RFC assessment.

In December 1997, Holmstrom first saw Dr. William Egan at the Omaha VA medical center for treatment of his depression. Dr. Egan restarted full dosages of Holmstrom's antidepressant medication. Be-

3. Until late 1997, at all times relevant to this case, Holmstrom resided in California and attended VA medical facilities there. Beginning in 1992, Holmstrom lived most of the time with his brother and sister-in-law. He moved to Iowa in late 1997 so that he could continue to live with them. At that time began to attend a VA medical center in Omaha, Nebraska.

cause Holmstrom was once again troubled by side effects of the drug, Dr. Egan soon changed the prescription to a different antidepressant. He subsequently doubled, then tripled, the dosage of this new medication. Dr. Egan referred Holmstrom to Dr. David Kopacz for a determination of whether Holmstrom had post-traumatic stress disorder (PTSD) stemming from his combat service in Vietnam. Dr. Kopacz diagnosed Holmstrom with PTSD and admitted him to the VA PTSD clinic. In May 1998, Dr. Egan filled out a mental RFC questionnaire. On this form, he concluded that Holmstrom's psychiatric status severely affected his work-related abilities (e.g., carrying out short and simple instructions, maintaining regular attendance and punctuality, and sustaining an ordinary routine without special supervision). Dr. Egan wrote that he considered Holmstrom disabled. The record indicates that Holmstrom had been seen by Dr. Egan on four occasions before Dr. Egan completed the RFC assessment.

The ALJ held a hearing in May 1998 and a supplemental hearing two months later. Holmstrom testified that he had not worked since 1986 and that he could not lift more than ten pounds or bend forward or backward because of the pain caused by these actions. He could sit no more than thirty minutes, nor stand more than fifteen minutes, before changing position. If alternating between standing and sitting did not alleviate his pain, he tried lying down, which usually gave him some relief.[4] He stated that he needed to lie down several times each day for up to an hour at a time. If lying down did not alleviate the pain,

Holmstrom took his codeine painkillers; his prescription allotted him forty-five painkillers per month. He noted that the condition had consistently deteriorated over the previous several years; things he could do two years before, he could no longer do at the time of the hearing.

Virginia Holmstrom, the claimant's sister-in-law, with whom he had lived much of the previous six years, also testified. She stated that Holmstrom could not sit for more than thirty minutes at a time. He changed positions frequently to alleviate his back pain. He laid down for more than thirty minutes about three times per day because of his back pain. Ms. Holmstrom also stated that she thought the claimant had last worked in 1993 or 1994 as a freelance repairman.[5]

After the ALJ issued her decision, the Appeals Council accepted into the record additional medical evidence covering a period up to and including November 5, 1998. This additional evidence included records from office visits to Dr. Kopacz. On August 20, Holmstrom reported that his pain decreased only when he laid down flat, and Dr. Kopacz noted that Holmstrom was physically uncomfortable and changed positions frequently in attempts to relieve his pain. Dr. Kopacz also noted that Holmstrom was "obviously severely impaired due to chronic pain as well as symptoms of [PTSD] and depression." In September, Dr. Kopacz increased Holmstrom's antidepressant medication dosage again, to four times the originally prescribed amount. In a subsequent visit, Dr. Kopacz lowered the dosage to its original level but added

---

4. During a July 1998 interview, part of his evaluation for admission to the PTSD clinic, Holmstrom reported that his daily activities comprised: getting up and sitting around until his back hurt, then lying down until it felt better, then repeating this pattern until he went to bed at night.

5. In response to a question from the ALJ, Holmstrom stated that his sister-in-law was perhaps referring to the fact that in those years he was able to do light handyman tasks and occasionally helped friends with small projects.

another medication intended to treat both depression and pain. The added evidence also contained an October 1998 MRI showing that the lower lumbar and upper sacral region of Holmstrom's back contained "advanced degenerative disc and facet disease," a possible disc herniation or bony outgrowth, and neural foramen stenosis.

## II. DISCUSSION

■■■ We review to determine whether substantial evidence on the record as a whole supports the findings of the ALJ. *Beckley v. Apfel,* 152 F.3d 1056, 1059 (8th Cir.1998). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Id.* We consider evidence that fairly detracts from, as well as that which supports, the ALJ's decision. *Id.*

The ALJ applied the standard five-step procedure for determining whether Holmstrom is disabled. *See* 20 C.F.R. § 416.920. The ALJ concluded that, although Holmstrom has a severe impairment and does not have the RFC to perform his past work repairing security alarms, the Commissioner had carried his burden of establishing that there are jobs in the national economy which Holmstrom could perform. *See McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982). Therefore, Holmstrom was not entitled to SSI benefits for disability.

In concluding that there exist jobs Holmstrom could perform, the ALJ relied on a vocational expert's response to a hypothetical posed by the ALJ. The hypothetical assumed that Holmstrom's impairments included chronic lower back pain, degenerative disc disease in the lumbar spine, major depression in remission, and PTSD. The hypothetical also assumed that Holmstrom's RFC allowed him to lift no more than fifty pounds occasionally, lift twenty-five pounds repetitively, stand and sit no more than six hours in an eight-hour workday, and stoop occasionally, and that Holmstrom was only mildly affected in his ability to maintain attention and concentration. The physical limitations in this RFC are a repetition of those listed in Holmstrom's 1996 orthopedic examination and RFC assessment. With the exception of the inclusion of Holmstrom's PTSD diagnosis, the hypothetical assumed Holmstrom's psychiatric situation as of the summer of 1997. Holmstrom challenges the accuracy of this RFC, arguing that the ALJ erred by improperly discrediting his testimony regarding his pain and limitations and improperly discounting the opinions of his treating physicians.

### A. RFC Assessments of the Treating Physicians

■■■ "The [social security] regulations provide that a treating physician's opinion ... will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Prosch v. Apfel,* 201 F.3d 1010, 1012–13 (8th Cir.2000) (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)). An ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Id.* at 1013. Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting. *Id.* (citing 20 C.F.R. § 404.1527(d)(2)).

■■■ The ALJ discounted the opinions of Drs. Egan and Britt regarding Holmstrom's RFC because they were in checklist form, were based on only relatively

short-term relationships with Holmstrom, and were inconsistent with the medical evidence as a whole. On her RFC assessment, Dr. Britt answered several questions regarding limitations with "ask the patient." The ALJ noted that Dr. Britt's opinion was inconsistent both with the 1996 RFC evaluation and with the fact that there was no evidence in the medical record that any doctor in California had placed limitations on Holmstrom. The ALJ determined that Dr. Egan's RFC evaluation was not only inconsistent with the 1996 mental RFC evaluation, but was also inconsistent with Dr. Egan's own office notes in the medical record.

The ALJ did not err in discounting the RFC assessments from Drs. Britt and Egan. Other substantial evidence in the record is inconsistent with the RFC assessments of Drs. Britt and Egan, so their assessments need not be accorded controlling weight; in addition, the checklist format, generality, and incompleteness of the assessments limit their evidentiary value. *See Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir.1996) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements.").

That the Omaha RFC evaluations may be discounted does not mean, however, that all the medical records from Omaha may be disregarded. These records show that Holmstrom was prescribed increasing doses of antidepressant medication throughout 1998, indicating that his depression was not in remission. The records also contain objective medical evidence that, when compared to the reports from California physicians relied upon by the ALJ, indicate a worsened and worsening physical condition. This tends to corroborate Holmstrom's hearing testimony, as we discuss below.

**B. Holmstrom's Testimony of Back Pain**

■ The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts. *See Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). The ALJ determined that Holmstrom's testimony as to his pain and limitations was out of proportion to the medical findings. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998) ("The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole."). The ALJ noted in particular that Holmstrom had never been restricted from all work by a treating physician, that the California orthopedic examination showed that Holmstrom was not restricted by his back pain, and that no surgery had ever been suggested.

■ Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). This evidence includes, beyond objective medical evidence, the claimant's prior work record, and observations by third parties and treating and examining physicians as to: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Id.*

In her decision, the ALJ noted the *Polaski* factors and specified the following reasons for discrediting Holmstrom's testimony: Holmstrom had a poor work record; Holmstrom appeared to be motivated to qualify for disability benefits and failed to exercise to combat weight gain; Holmstrom testified at the hearing that he could only walk one block, contradicting his statement to a doctor in 1997 that he

walked over a mile each day for exercise; the medical record did not show that Holmstrom had ever told a doctor that he needed to lie down several times each day; and Holmstrom and his sister-in-law differed on some points of their testimony (e.g., in their estimations of the number of times each day Holmstrom "blanked out" and the year in which Holmstrom last worked).

Although the record credited by the ALJ (one effectively limited to that created while Holmstrom lived in California) may not contain sufficient objective medical evidence to support Holmstrom's subjective complaints, the record *as a whole* does support them. The record as a whole, including Virginia Holmstrom's testimony and all of the medical records, corroborates Holmstrom's subjective complaints in such a qualitative manner as to negate the inconsistencies pointed out by the ALJ. The results of Holmstrom's October 1998 MRI corroborate his 1998 testimony regarding the deteriorating condition of his back. His testimony as to the limitations that accompany the pain (in particular, his claim that he needed to lie down several times each day) is corroborated by his sister-in-law's testimony and by physicians' entries into the Omaha medical record.[6]

When the corroborative evidence is considered, Holmstrom's subjective complaints are credible. When Holmstrom's credible testimony as to his pain-induced limitations is properly considered, the RFC determined by the ALJ is insufficient. It does not include all of Holmstrom's impairments, limitations and restrictions. The ALJ's RFC determination included "depression in remission." This was clearly incorrect, as throughout 1998 his doctors repeatedly increased the dosage of his antidepressant medication. But even setting aside any limitations on Holmstrom's abilities due to his depression and PTSD, the record as a whole requires that Holmstrom's RFC provide that he would need to lie down at times each workday. This limitation was not part of the hypothetical posed to the vocational expert by the ALJ. Because the hypothetical question posed to the vocational expert was based on this incorrect RFC, the expert's response cannot constitute substantial evidence to support a conclusion that Holmstrom is not disabled. *Cox v. Apfel,* 160 F.3d 1203, 1207 (8th Cir.1998). The Commissioner did not carry the burden of establishing that there are jobs Holmstrom can perform.

Holmstrom, on the other hand, did establish that he is disabled. In answer to a hypothetical posed by Holmstrom's counsel, the vocational expert testified that there would be no jobs in the national economy for Holmstrom if he needed to lie down at times each day. As Holmstrom has established his disability, it is unnecessary that this case be remanded to the Commissioner for further proceedings except to award benefits.

As we have noted, Holmstrom is receiving SSI benefits under a subsequent application. We determine that, on the record as a whole, Holmstrom was qualified for those benefits as of November 5, 1998. The record establishes his disability as of that date.

---

6. We note that Holmstrom's failure to inform his doctors of his need to lie down at times each day is not a severe blow to his credibility. *See Taylor v. Chater,* 118 F.3d 1274, 1277–78 (8th Cir.1997) (holding that claimant's failure to tell her doctors she needed to lie down each day was not an inconsistency showing claimant not credible, when she had consistently complained of back pain over several years and made many visits to doctors for back pain).

## III. CONCLUSION

We reverse and remand with directions that Holmstrom be awarded benefits on the basis of his having met all requirements for SSI benefits as of November 5, 1998.

