# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3134

_____

| | | |
|---|---|---|
| Rodney D. Boettcher, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Northern District of Iowa. |
| | * | |
| Michael J. Astrue, Commissioner of | * | |
| Social Security, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 12, 2011
Filed: August 30, 2011

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

The Commissioner of Social Security appeals the district court's judgment reversing the Commissioner's decision to deny Rodney D. Boettcher supplemental security income (SSI) benefits. Because the Commissioner's decision was supported by substantial evidence, we reverse and remand.

I.

Boettcher applied for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1382. His application was denied initially and on

reconsideration. Boettcher requested a hearing before an Administrative Law Judge (ALJ).

At the hearing, the ALJ received testimony from Boettcher, Boettcher's mother, and a vocational expert. The ALJ applied the five-step sequential evaluation for determining whether a claimant is disabled, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one of the sequential evaluation, the ALJ found that Boettcher had not engaged in substantial gainful activity since May 11, 2005. At step two, the ALJ found that Boettcher experiences severe physical impairments in the form of "degenerative disc disease in the lumbosacral spinel; the residuals of fusion surgery in the lumbosacral spine; and degenerative joint disease in the right knee." At step three, however, the ALJ decided that Boettcher's severe impairments did not meet or equal any of the listed impairments. At step four, after discounting Boettcher's testimony, the ALJ found that Boettcher has the residual functional capacity (RFC) to perform sedentary work, as long as he has the option of alternating between sitting and standing on the job. Finally, at step five, the ALJ concluded that although Boettcher is incapable of performing his past work as a meat trimmer, production welder, maintenance mechanic, and construction worker, he can perform other jobs that exist in the economy. The ALJ therefore concluded that Boettcher was not disabled at any time from the alleged onset date through the date of the decision. The Appeals Council declined to hear the case, making the ALJ's decision the final decision of the Commissioner.

Boettcher appealed the Commissioner's decision to the district court, arguing that the ALJ erred in not finding that his impairments met or equaled one of the listed impairments at step three and erred in discounting his subjective complaints. The district court reversed, holding that because the ALJ erroneously discounted Boettcher's testimony, the ALJ's determination of Boettcher's RFC was not supported by substantial evidence. The district court concluded that had the ALJ correctly credited Boettcher's testimony, Boettcher's RFC would have additionally included the

need to lie down often and to have frequent, unscheduled breaks. Based on the testimony from the vocational expert that these two additional restrictions would make Boettcher unemployable, the district court concluded that additional proceedings would only delay his eventual receipt of disability benefits. The district court reversed the Commissioner's decision and directed an award of benefits.

The Commissioner appeals the district court's decision, arguing that the ALJ permissibly discounted Boettcher's testimony and that the district court substituted its own judgment for that of the ALJ in concluding otherwise. In the alternative, the Commissioner asserts that even if the ALJ erred, the district court should have remanded for additional proceedings and erred in directing the entry of an award of benefits. Boettcher reasserts on appeal that the ALJ also erred at step three by finding that his severe impairments did not meet or equal one of the listed impairments.

II.

We review de novo a district court's decision upholding or reversing the denial of social security benefits. Reutter ex rel. Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004). We will affirm the ALJ's decision if it is supported by substantial evidence in the record as a whole. Harris v. Barnhart, 356 F.3d 926, 928 (8th Cir. 2004). Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). We consider both evidence that detracts from the decision and evidence that supports it. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006). We will not reverse simply because some evidence supports a conclusion other than that reached by the ALJ. Pelkey v. Barnhart, 433 F.3d 575, 578 (8th Cir. 2006). Likewise, "we defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." Id. (quoting Guilliams, 393 F.3d at 801).

III.

Boettcher contends that at step three, the ALJ erred in concluding that Boettcher's impairments did not meet or exceed one of the listed impairments and in not explaining the conclusion. There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record. See Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003); Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001). In order to prove that his back pain met the listed impairment for "disorders of the spine," Boettcher was required to show not only that his degenerative disc disease is a condition "resulting in compromise of the spinal cord," but also that he meets one of the specific symptom and documentation requirements under subsections A, B, or C. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.04, 1.04(A), 1.04(B), 1.04(C); see Jones v. Astrue, 619 F.3d 963, 969 (8th Cir. 2010) (stating the claimant must show that his impairment matches all of the specified medical criteria of a listing). There was evidence in the record, however, that Boettcher did not suffer from the sensory or reflex loss required under subpart A; Boettcher did not produce the necessary documentation to show he suffered from spinal arachnoiditis required under subpart B; and Boettcher's difficulty in walking is not the type of extreme limitation on ambulation required under subpart C. Therefore, ample evidence exists in the record to support the ALJ's conclusion that Boettcher's back pain was not an impairment matching the listing for "disorders of the spine."

The ALJ also did not err in discounting Boettcher's testimony. Before discrediting subjective complaints of pain and limitation, the ALJ must consider all of the evidence, including the claimant's work record and daily activity; the intensity, duration, and frequency of the claimant's pain and the conditions causing and aggravating the pain; the effectiveness of medication; and any functional limitations. Polaski v. Heckler, 739 F.2d 1320, 1321-22 (8th Cir. 1984) (per curiam order); see also Partee v. Astrue, 638 F.3d 860, 865 (8th Cir. 2011). Here, the ALJ explicitly

discredited Boettcher's testimony and gave good reasons for doing so.  See Finch v. Astrue, 547 F.3d 933, 935-36 (8th Cir. 2008) (stating the standard for deferring to an ALJ's credibility determination).  The ALJ considered that: (1) Boettcher gave conflicting statements about whether he stopped working because of back pain; (2) Boettcher testified during the hearing to severe physical limitations, but the medical record shows that he did significant car repairs on three separate occasions in 2006 and 2007; (3) Boettcher gave inconsistent statements about the intensity and consistency of his back and hip pain; (4) Dr. Rachel Ramirez opined that opiate pain killers and physical therapy might relieve some of his pain if Boettcher would stop his recreational drug use and consistently attend physical therapy; and (5) Dr. Ramirez opined that Boettcher could work in a job in which he could change positions and move freely.  We conclude that valid reasons supported the ALJ's adverse credibility determination.  See id.; Watkins v. Astrue, 414 F. App'x 894, 895-96 (8th Cir. 2011) (unpublished per curiam).

Further, the ALJ's RFC determination was supported by substantial evidence. Having discounted Boettcher's testimony, the ALJ relied on the opinions of Boettcher's examining doctors, Dr. Thomas Schryver and Dr. Ramirez, to determine Boettcher's limitations.  Dr. Schryver opined in 2005 that Boettcher could handle mild to moderate labor activities and that he could both sit and stand if he was allowed to get up and move around throughout the day.  Similarly, in 2007, Dr. Ramirez testified that Boettcher could be employed in a field where he could change positions and move freely.  Although Dr. Ramirez stated that Boettcher would have to take breaks more frequently than people without Boettcher's injuries, Dr. Ramirez never specified the exact frequency or opined whether Boettcher needed to have the flexibility to take unscheduled breaks.  We conclude that substantial evidence in the record supported the ALJ's determination that Boettcher could perform sedentary work as long as he had the option of alternating between sitting and standing.

Finding that the ALJ's decision is supported by substantial evidence, we reverse the district court's decision and remand for the district court to affirm the decision of the Commissioner.

BYE, Circuit Judge, dissenting.

I agree with the district court's decision to reverse the Administrative Law Judge's (ALJ) denial of supplemental security income benefits to Rodney Boettcher. As set forth in the district court's thorough memorandum opinion, the record overwhelmingly supports a finding of disability. Because the ALJ improperly discredited Boettcher's subjective complaints of pain and did not fully account for his asserted limitations in determining Boettcher's residual functional capacity (RFC), I respectfully dissent from the majority's decision to reverse the district court.

"Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility." Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007). To do so, the ALJ considers: "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." Moore v. Astrue, 572 F.3d 520, 524 (8th Cir. 2009) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). "When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors." Dipple v. Astrue, 601 F.3d 833, 837 (8th Cir. 2010). "[A]n ALJ may not discount a claimant's subjective complaints solely because the objective medical evidence does not fully support them." Wiese v. Astrue, 552 F.3d 728, 733 (8th Cir. 2009). "If an ALJ explicitly discredits the

claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." Juszczyk v. Astrue, 542 F.3d 626, 632 (8th Cir. 2008) (internal quotation marks and citation omitted).

In this case, the ALJ's credibility assessment is not supported by substantial evidence in the record as a whole. Boettcher testified to three asserted limitations – his need to frequently alternate positions, his need to lie down when he becomes too active, and his need to take frequent breaks. Despite these uncontradicted limitations, the ALJ concluded Boettcher's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." In particular, the ALJ only accounted for the first limitation concerning Boettcher's need to change positions frequently, while rejecting his needs to lie down and take frequent breaks–each of which the vocational expert testified would likely preclude employment.

Yet, many of the ALJ's stated reasons for discounting Boettcher's subjective complaints are unsupported by the record, if not completely contradicted by it. For instance, the ALJ cited Boettcher's failure to seek treatment and report his pain consistently, but the record shows otherwise. See, e.g., Social Security Tr. at 150 (noting Boettcher was "plagued by persistent low back pain that radiates into his right buttock and his right thigh"); id. at 158 (complaining of numbness in hands and pain shooting down from back to feet). Accordingly, the medical evidence does not support the ALJ's finding. See Bowman v. Barnhart, 310 F.3d 1080, 1083 (8th Cir. 2002) (concluding the ALJ erred in discounting the claimant's allegations of disabling pain because the medical evidence did not support the ALJ's finding). Similarly, the ALJ's reliance on Boettcher's failure to circle "backache" on an intake form in January 2007 is explained by Boettcher's repeated statements at other portions of the record where he indicated his inability to fill out such forms, particularly when experiencing pain. See, e.g., Social Security Tr. at 73 (noting he "can't never [sic] fill

out stuff like this or applications in order" and he "always catch[es] [himself] skipping over [a] question even if it is a yes or no answer").

Moreover, the ALJ cited a few isolated incidences where Boettcher performed work on vehicles, which was his hobby, to conclude Boettcher was inconsistent in his testimony about his symptoms and limitations. Contrary to the ALJ's finding, these incidents do not show Boettcher was inconsistent in his testimony, nor do they demonstrate he was able to perform work on a daily basis. "We have long stated that to determine whether a claimant has the residual functional capacity necessary to be able to work we look to whether [he] has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" Forehand v. Barnhart, 364 F.3d 984, 988 (8th Cir. 2004) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc)). Accordingly, "[t]his court has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." Wagner, 499 F.3d at 851 (internal quotation marks and citation omitted). "In evaluating a claimant's RFC, consideration should be given to the quality of the daily activities and the ability to sustain activities, interests, and relate to others *over a period of time* and the frequency, appropriateness, and independence of the activities must also be considered." Id. (internal quotation marks and citation omitted) (emphasis in original). "Moreover, it is well-settled law that a claimant need not prove [he] is bedridden or completely helpless to be found disabled." Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks and citation omitted). Given our well-settled case law, the ALJ improperly relied on Boettcher's isolated engagement in his hobby to conclude he retained the ability to work. See, e.g., Tilley v. Astrue, 580 F.3d 675, 681 (8th Cir. 2009) ("[The claimant's] ability to engage in some life activities, despite the pain it caused her, does not mean she retained the ability to work as of the date last insured."); Reed, 399 F.3d at 923

("Reed's testimony about her symptoms hardly seems inconsistent with her ability to perform such routine and simple daily living activities 'to any degree.'").

More importantly, the ALJ erred in assessing the physicians' opinions. The ALJ placed significant weight on these opinions, particularly the opinion of Dr. Ramirez, but the ALJ misstated Dr. Ramirez's conclusions, or at the very least, did not fully account for her prognosis. Specifically, Dr. Ramirez stated Boettcher's "physical disability may be strong enough to warrant disability benefits" and "he seems to be cooperating in his medical care and wants to better his chronic conditions." Social Security Tr. at 197. Dr. Ramirez also discussed Boettcher's chronic lower back pain, and noted "he will likely need frequent breaks during any work day, and probably more frequently than what is usually offered for employees who do not suffer conditions like his." Id. The ALJ failed to even mention these statements–all of which support Boettcher's subjective complaints of pain.

To be sure, as the district court recognized, there were inconsistencies in the record supporting the ALJ's decision. For instance, Boettcher tested positive for methamphetamine on a few occasions, and the time line he testified to concerning his drug use was slightly off with the test results in the record. Moreover, there were some inconsistencies relating to Boettcher's reason for leaving his job in 2004 and the reason for his knee injury. Importantly, however, these inconsistencies do not go toward the existence, intensity, or duration of Boettcher's pain. As discussed above, Boettcher's complaints of pain are consistent with the medical evidence in the record, as well as the testimony of his mother. In sum, the record *as a whole* does not demonstrate Boettcher was inconsistent in his testimony. See Brosnahan v. Barnhart, 336 F.3d 671, 677 (8th Cir. 2003) (reversing where the ALJ's multiple reasons for discrediting the claimant were unsupported by the record because the supposed inconsistencies were not actually inconsistent and the ALJ relied on improper reasons to hold otherwise); Holmstrom v. Massanari, 270 F.3d 715, 722 (8th Cir. 2001) ("Although the record credited by the ALJ . . . may not contain sufficient objective

medical evidence to support [the claimant's] subjective complaints, the record *as a whole* does support them.") (emphasis in original). As a result, I do not believe substantial evidence supports the ALJ's credibility findings because the ALJ failed to account for two of Boettcher's asserted needs, or properly explain why these asserted needs were not credible.

The ALJ's failure to account for all of Boettcher's asserted needs is fatal to the subsequent RFC determination. "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Moore, 572 F.3d at 523 (internal quotation marks and citation omitted). This court has held on numerous occasions the ALJ need not include asserted limitations from a claimant's testimony in his RFC determination if the ALJ discredits such testimony. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[T]he ALJ [is] not obligated to include limitations from opinions he properly disregarded."); Juszczyk, 542 F.3d 633 (holding the ALJ applied the correct legal standard in assessing the claimant's RFC because, while there was evidence showing the claimant would have difficulties performing in stressful conditions, the evidence was in the form of the claimant's testimony, which was discredited, as well as the treating physician's report, which was not given controlling weight).

Having determined above the ALJ improperly discounted Boettcher's subjective complaints, I would conclude the RFC, which was based in part on Boettcher's subjective complaints, was also in error because it did not include all of the asserted limitations. Boettcher's credible complaints of pain demonstrated his needs to alternate between standing and sitting frequently, to lie down frequently, and to take frequent breaks. The ALJ erred by not including all of these limitations in the RFC determination. See Holmstrom, 270 F.3d at 722 ("When [the claimant's] credible testimony as to his pain-induced limitations is properly considered, the RFC

determined by the ALJ is insufficient [because] [i]t does not include all of [the claimant's] impairments, limitations and restrictions.").

Likewise, the hypothetical posed to the vocational expert did not account for all of Boettcher's impairments. "A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." Hulsey v. Astrue, 622 F.3d 917, 922 (8th Cir. 2010). "Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision. Hypothetical questions should set forth impairments supported by substantial evidence on the record and accepted as true and capture the concrete consequences of those impairments." Jones v. Astrue, 619 F.3d 963, 972 (8th Cir. 2010) (internal quotation marks and citation omitted). Because the hypothetical did not account for Boettcher's asserted needs to lie down and to take frequent breaks, the vocational expert's response cannot constitute substantial evidence. See Guilliams v. Barnhart, 393 F.3d 798, 804 (8th Cir. 2005) ("Hypothetical questions that assume a claimant is capable of performing a category of work are problematic because they often result in a failure to create a record showing that the vocational expert considered the particular individual disabilities of the claimant in evaluating his ability to perform alternative employment.") (internal quotation marks and citation omitted); Snead v. Barnhart, 360 F.3d 834, 837 (8th Cir. 2004) (stating the ALJ failed to fully and fairly develop the record because "[e]ven though [the claimant's] evidence showing his incurable cardiomyopathy went uncontradicted, the ALJ did not incorporate evidence of [the claimant's] heart condition in the hypothetical posed to the VE."). Indeed, in response to questions posed by Boettcher's counsel, the vocational expert testified an individual who required frequent breaks as Boettcher did, as well as an individual who required the ability to frequently lie down, would not be employable. See Holmstrom, 270 F.3d at 722 (concluding the claimant established he was disabled because "[i]n answer to a hypothetical posed by [the claimant's] counsel, the vocational expert testified that

there would be no jobs in the national economy for [the claimant] if he needed to lie down at times each day.").

For the foregoing reasons, I would conclude substantial evidence on the record as a whole does not support the ALJ's decision. I therefore respectfully dissent from the majority's decision to reverse the district court.

_____