# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3298

_____

Theresa Kay Aguiniga

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: April 13, 2016
Filed: August 15, 2016

_____

Before WOLLMAN, BEAM, and MURPHY, Circuit Judges.

_____

BEAM, Circuit Judge.

Theresa Aguiniga appeals the district court's[1] decision affirming the Commissioner's decision to deny Aguiniga social security disability benefits. We affirm.

_____

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

## I.    BACKGROUND

Aguiniga, a 44-year-old woman (at the time of her alleged onset date), was in a motorcycle accident in September 2007, wherein she fractured her pelvis in six places, and also broke her wrist.  An MRI performed in January 2008 indicated bulging discs in the lumbar and cervical region at several different locations.  She complained of numbness and tingling in her extremities in numerous doctor visits following the accident.  She saw doctors for these conditions and complained of pain regularly in the year following the accident.  Nonetheless, in the fall of 2008, Aguiniga was discharged from physical therapy after cancelling three appointments and not rescheduling.  Although she was treated with steroid injections for a time, she ultimately stopped that treatment, requesting that her pain be controlled with pain medications.  Too, shortly after the accident, Aguiniga experienced psychological problems and saw mental health practitioners.  However, she did not seek mental health therapy from June 2008 until December 2008.  In the first half of 2009, she saw doctors for her back pain and a licensed social worker for mental health issues.

Aguiniga first applied for social security disability benefits in late 2007, and was denied benefits initially on January 15, 2008, and on reconsideration on June 4, 2008.  Aguiniga did not appeal[2] the denial of benefits after this first application.  Instead, on May 12, 2009, Aguiniga filed a new application for disability benefits, alleging an onset disability date of April 28, 2009.  In late June and early July 2009, Aguiniga's physical and mental Residual Functional Capacity (RFC) evaluations were prepared by the Social Security Administration's disability determination services.  The physical assessment indicated some exertional limitations and occasional postural limitations. The mental assessment indicated Aguiniga would be moderately limited in sustained concentration and social interaction.  Aguiniga's application was

---

[2]The specifics of this initial application for benefits are not in the current administrative record because, as best we can tell, Aguiniga did not appeal the denial of benefits on reconsideration to an Administrative Law Judge (ALJ), and the denial of the first application therefore became final.

denied initially and on reconsideration. She appealed to the ALJ, and after filing her appeal, via a March 26, 2010 letter from her attorney to the ALJ, she moved to reopen her prior (2007) application, effectively alleging that her current onset of disability date should be the date of the motorcycle accident, September 7, 2007. Included with the attorney's letter to the ALJ was a March 2010 report from a vocational expert who opined that Aguiniga would not be able to return to her past relevant work as a mail clerk or information specialist, because of her physical and mental impairments. Without addressing her motion to reopen or holding a hearing, on March 30, 2010, the ALJ issued a favorable decision, awarding Aguiniga benefits with an onset date of April 28, 2009. The ALJ found that Aguiniga had the severe impairments of adjustment/mood disorder; anxiety disorder; chronic pain syndrome; sequelae of motorcycle accident; status post multiple pelvic and sacral fractures, with left wrist fracture; degenerative changes of the cervical and lumbar spine; and exogenous obesity. The ALJ determined Aguiniga had the capability of performing sedentary work except that her ability to perform sedentary work was significantly limited by her mental impairments.

Aguiniga appealed that favorable ruling, alleging that the ALJ should have considered her motion to reopen and awarded benefits from the onset date of September 7, 2007. The Commissioner also filed an unopposed motion to remand, arguing that the ALJ should have considered Aguiniga's request to reopen. On March 25, 2013, the district court directed the Appeals Council to remand the case to the ALJ to issue a new decision and consider the entire relevant period. Accordingly, the Appeals Council vacated the prior favorable decision, remanded, and directed the ALJ to hold a new hearing, as necessary, to issue a new decision that addresses the *entire* relevant period, and to resolve whether or not Aguiniga's original request for reopening (to consider the new date) should be granted.

In September 2013, an ALJ (a different ALJ than the one who originally awarded benefits without a hearing) sent Aguiniga a notice of hearing stating, "[a]lthough you were previously determined to meet the disability requirements as of

April 28, 2009, I will consider whether you have been disabled at any time from the alleged onset date of September 7, 2007 through the present." The ALJ also stated that if Aguiniga disagreed with the issues designated for hearing, "you must tell me in writing why you disagree." Aguiniga did not write to disagree with the issues so designated, and waived her right to appear at the hearing. At the hearing on November 4, 2013, the Commissioner's vocational expert testified but was only examined by the ALJ because Aguiniga's attorney did not appear at the hearing either.

On December 23, 2013, the ALJ issued its decision and found Aguiniga has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; residuals of fracture and fixation of the left radius; the residuals of sacral and pelvic fractures; obesity; a mood disorder; and an anxiety disorder. The ALJ, expressly noting that the period of time it was considering was from September 7, 2007, through the date last insured, September 30, 2013, concluded Aguiniga could not perform her past relevant work as a general clerk, but retained the RFC to perform light work, with additional limitations, as a retail marker, mail clerk, and copy machine operator. Accordingly, Aguiniga was found to be not disabled. The district court affirmed the ALJ's decision. Aguiniga appeals, arguing the district court erred by failing to apply collateral estoppel to the first ALJ's decision awarding benefits. Aguiniga further faults the (second) ALJ's adverse credibility finding and its decision to discount the treating source physicians' opinions.

## II.    DISCUSSION

We review the district court's decision upholding the denial of social security benefits de novo, applying the same standard as the district court to the ALJ's decision–affirming if substantial evidence supports the decision and if on the whole, a reasonable mind could accept the ALJ's decision. Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008).

Aguiniga contends the ALJ should have been precluded from reconsidering Aguiniga's disability status post-April 2009, because in its Motion to Remand, the Commissioner only asked the ALJ to determine whether it should have considered Aguiniga's motion to reopen to add her new onset date. The Commissioner argues the doctrine of collateral estoppel is wholly inapplicable to this case because there is no final judgment to which the doctrine of collateral estoppel could conceivably attach. See Ginters v Frazier, 614 F.3d 822, 826 (8th Cir. 2010) (setting forth the elements required for operation of collateral estoppel, the fourth element being that the issue sought to be precluded must have been determined by a valid and final judgment). The Commissioner argues that the prior favorable decision Aguiniga would like to be given preclusive effect was actually vacated by the Appeals Council.

Collateral estoppel and res judicata can apply in certain circumstances of social security determinations, when the issue involves the same evidence, and the same period of disability. See Rucker v. Chater, 92 F.3d 492, 495 (7th Cir. 1996) (holding that collateral estoppel was not applicable because the subsequent application for benefits involved a different time period and a different record); Hardy v. Chater, 64 F.3d 405, 407 (8th Cir. 1995) (same). Citing Rucker and Hardy, Aguiniga argues by extension, that because her application involves the same evidence and (part of) the same time period as her original application, the original ALJ's findings should be preclusive. However, in Hardy we noted that collateral estoppel applies in social security disability cases only after a decision has become *final*. 64 F.3d at 407. Neither Hardy nor Rucker involves what has happened here–the judgment sought to be enforced (the original ALJ decision) was vacated before it became final. See Atkins v. Comm'r, Soc. Sec. Admin., 596 F. App'x 864, 868 (11th Cir. 2015) (per curiam) (noting that collateral estoppel doctrine did not revive a previously favorable ALJ decision that never became final because the Appeals Council vacated it). To the extent that Aguiniga argues the Appeals Council decision did not "vacate" the ALJ's decision, we disagree. In an order dated July 9, 2013, the Appeals Council very clearly states that it "hereby vacates the final decision of the Commissioner of Social

Security and remands this case to an Administrative Law Judge for further proceedings consistent with the order of the court."

Nor does the law-of-the-case doctrine revive Aguiniga's original application. "'The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier pleadings.'" Brachtel v. Apfel, 132 F.3d 417, 419 (8th Cir. 1997) (quoting United States v. Bartsh, 69 F.3d 864, 866 (8th Cir. 1995)).  The doctrine "applies to administrative agencies on remand."  Id. Thus, an administrative agency is bound by any finding that a district court renders prior to remanding a case for further consideration.  Id. at 420.  Similar to the collateral estoppel issue, however, nothing in this case was settled fact or law given the Appeals Council's vacation of the original opinion of the ALJ.  The ALJ was further directed to "[a]ddress the entire relevant period" and "issue a new decision." Accordingly, neither the doctrine of collateral estoppel nor law of the case applies to Aguiniga's claim.

With regard to the merits, Aguiniga argues that there was not substantial evidence to support the current ALJ's decision because he erroneously gave her an adverse credibility finding and discounted the opinion of her treating physicians. Aguiniga points to her treatment with Kelly Kinney, a licensed social worker, and argues that the ALJ discounted her opinion as not being a "treating source" medical opinion because she is a licensed social worker.  Aguiniga contends the ALJ erroneously did not consider more recent administrative guidelines that would consider Kinney a "treating source," even though the current social security regulations do not consider a social worker as such.  See 20 C.F.R. 404.1502 (defining treating sources as medical practitioners).  Aguiniga cites Social Security Ruling 06-03p, which recognizes that licensed clinical social workers are handling more cases now than in previous years and that their opinions are "important and should be evaluated."

The record indicates, however, that the ALJ did, in fact, consider and evaluate Kinney's opinion. Indeed, the ALJ formulated Aguiniga's RFC to reflect the concentration and stress factors described by Kinney. The ALJ did discount some of Kinney's opinion about Aguiniga's marked limits on performing work at a consistent pace because it found the record did not support Kinney's conclusions. We find there was substantial evidence in the record to support the ALJ's conclusions on this point.

Aguiniga next argues the ALJ ignored the opinion of treating source Dr. Heims, who opined that Aguiniga could not keep up with the demands of a work schedule, and of Dr. Stubblefield, a treating physician who opined that Aguiniga's anxiety causes difficulty with following through and that chronic fatigue would impair her ability to concentrate at work. An ALJ must assign controlling weight to a treating source's medical opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 20 C.F.R. § 404.1527(c)(2). Treating source opinions are generally entitled to substantial weight, but an ALJ may "justifiably discount" such an opinion when it is "inconsistent or contrary to the medical evidence as a whole." Martise v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011) (second passage quoting Halverson v. Astrue, 600 F.3d 922, 930 (8th Cir. 2010)). For example, an ALJ may discount a treating source opinion that is unsupported by treatment notes. Id. at 925-26.

The ALJ thoroughly considered Dr. Stubblefield's opinion, and in fact spent nearly two pages setting forth the opinion and treatment notes of Stubblefield in its written opinion. The ALJ gave Stubblefield's opinions some weight where it was warranted, and discounted it when it was contradicted by a lack of evidence or was undermined by contrary evidence in the treatment notes. Given this, the ALJ appropriately employed Dr. Stubblefield's opinion. See id.

Similarly, the ALJ set forth Dr. Heims's opinion, albeit in much more cursory fashion than Dr. Stubblefield's opinion, because none of Dr. Heims's treatment notes

-7-

were submitted by Aguiniga into the administrative record. Nonetheless, the ALJ did give some weight to Dr. Heims's opinion, and noted that the opinion was somewhat consistent with other record evidence that Aguiniga has some exertional limits and limitations upon interactions with the public. The ALJ's utilization of Dr. Heims's opinion was supported by substantial evidence in the record. See Martise, 641 F.3d at 925-26; Cline v. Colvin, 771 F.3d 1098, 1104 (8th Cir. 2014) (holding that the ALJ is not required to scour the record to find additional support for the opinion).

Finally, Aguiniga argues the ALJ erroneously assessed her with an adverse credibility determination by discounting her subjective complaints of pain. An ALJ may discredit any subjective allegations that cannot reasonably be expected to flow from an established, medically determinable impairment. 20 C.F.R. § 404.1529(b). Once a claimant has demonstrated the existence of an impairment that could reasonably be expected to produce the alleged symptoms, the question becomes whether the claimant's subjective allegations regarding the extent of her symptoms are credible. See id. §§ 404.1528, 404.1545(e). The ALJ must consider the consistency of the evidence, and consider information provided by the claimant, her doctors, and others with knowledge of her circumstances. Id. § 404.1529(c); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

Here the ALJ discounted Aguiniga's subjective allegations for many reasons: she had not sought treatment for some of the complained limitations, the objective medical evidence was inconsistent with several of her allegations, there was a general lack of consistent medical treatment, and she seemed to return to the doctors only when she needed disability forms filled out. The ALJ also noted Aguiniga was non-compliant with suggestions by her own treating physician for things like attending a pain clinic. All of these reasons demonstrate that the ALJ closely considered Aguiniga's claims and the extent to which they squared with evidence in the record. Given the fact that Aguiniga chose not to attend the hearing, the ALJ was not in a position to assess her credibility any other way than it did. Thus, there is substantial evidence to support the ALJ's adverse credibility finding.

## III. CONCLUSION

We affirm.

_____